**In re YARDARM RESTAURANT, INC., Debtor.**

**F.D.I.C., as Receiver for Sunrise Savings and Loan Association, Plaintiff,**

v.

**YARDARM RESTAURANT, Defendant.**

**Bankruptcy No. 86–00792–BKC–SMW.**
**Adv. No. 90–0469–BKC–SMW–A.**

United States Bankruptcy Court,
S.D. Florida.

Oct. 12, 1990.

Raymond B. Ray and Stewart Chambers, Fort Lauderdale, Fla., for debtor.

Chad P. Pugatch, Ft. Lauderdale, Fla., for Court Appointed Examiner.

Peter H. Levitt, Steel, Hector & Davis, Miami, Fla., for FDIC.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Chief Judge.

This cause was tried on October 9, 1990 upon the Amended Adversary Complaint for Reformation, filed by Federal Deposit Insurance Corporation, as Receiver for Sunrise Savings and Loan Association, a Federal Savings and Loan Association (hereinafter "F.D.I.C."), filed against YARDARM RESTAURANT, INC. (hereinafter "the Debtor"). The interests of the Debtor in this adversary proceeding were represented by Raymond B. Ray, as Court-appointed Examiner with expanded powers.[1] The Court, after examining the evidence presented, hearing testimony of witnesses and observing the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

---

**1.** This was ordered by the Court due to the fact that Debtor's counsel, Stewart Chambers, was a key witness in this case.

The Amended Complaint filed by F.D.I.C. is in two counts. Count I alleges fraud on the part of the Debtor and Count II alleges negligent misrepresentation on the part of the Debtor. Based upon the facts allegedly constituting such fraud or negligent misrepresentation, F.D.I.C. seeks reformation of its settlement agreement with the Debtor to include an unsecured claim in the amount of its deficiency upon sale of the real estate representing the collateral for its loan.

The facts underlying this lawsuit go back to the initial filing of the Yardarm Chapter 11 proceeding on March 20, 1986. The Debtor filed its Chapter 11 petition in order to stop the foreclosure sale of its real property upon a Final Judgment of Foreclosure obtained by F.S.L.I.C. F.D.I.C. is the successor to F.S.L.I.C. herein. Subsequent to the filing of the Chapter 11 petition, the parties litigated in the Bankruptcy Court, ultimately culminating in a settlement agreement dated October 3, 1988. The settlement agreement, which was approved by the Court, became the basis for the Debtor's Modified Plan of Reorganization and Disclosure Statement, providing in applicable part to allow F.S.L.I.C. to foreclose upon the subject real property; for the waiver of any and all claims by F.S.L.I.C. against the Debtor's estate; and for a waiver of claims by the Debtor against F.D.I.C. in exchange for the payment of the sum of $125,000.00 which was referred to as the "guaranteed fund" and which was utilized as the sole source of payment under the Debtor's Modified Plan for administrative expenses and creditors claims.

Subsequent to the filing of the Chapter 11 petition, but prior to the aforesaid settlement with F.S.L.I.C., the Debtor became aware, by virtue of a recent decision of the U.S. Supreme Court, that it had a potential cause of action against the City of Pompano Beach for damages for inverse condemnation of the subject real estate. This cause of action was discussed by the Debtor's counsel on at least two occasions with counsel for F.S.L.I.C., Patrick Barry. The initial conversation was a discussion as to the potential for such cause of action. The later discussion was a followup by Patrick Barry, as counsel for F.S.L.I.C., as to whether in fact the Debtor had proceeded to file the lawsuit for damages against the City of Pompano Beach. The Debtor's counsel, Stewart Chambers, replied that such litigation had in fact been filed; was dismissed for procedural grounds relating to notice to the City; and depending on the memory of the parties to this conversation (Barry and Chambers), that such litigation either had been refiled or would be refiled when the notice period had elapsed.

Subsequently, Patrick Barry, through correspondence dated July 20, 1987, transmitted to his co-counsel, Laurel Isicoff, a letter referring to the fact that the Debtor was filing its lawsuit for inverse condemnation damages against the City of Pompano Beach. The letter enclosed a newspaper article of July 17, 1987, which reported that the Debtor was, that date, filing its lawsuit for damages against the City of Pompano Beach, in the amount of $135,000,000.00.

It is important to note that, at that time, Patrick Barry, of the lawfirm of Blackwell, Walker, Fascell & Hoehl, was the attorney actively representing the interests of F.S.L.I.C. in the Yardarm bankruptcy case. Laurel Isicoff, his co-counsel, was from the lawfirm of Squire, Sanders & Dempsey, which lawfirm was acting in a supervisory capacity as to the Yardarm Case. At a date subsequent to these events, approximately April, 1988, Laurel Isicoff took over full representation of the F.S.L.I.C. in the Yardarm bankruptcy case and Mr. Barry's firm withdrew from representation.

As a result of the aforesaid settlement of October 3, 1988, the Modified Plan of Reorganization of the Debtor was confirmed by Court Order dated November 14, 1988. Said Plan was substantially consummated and all funds distributed.

In the context of recent court proceedings in this case, instituted by the City of Pompano Beach, F.D.I.C. now contends that it had no knowledge or notice of the pendency of the lawsuit for inverse condemnation damages against the City of Pompano Beach. It contends that such cause of action was not disclosed in any

amendment to the bankruptcy schedules, nor was it disclosed in the Modified Plan of Reorganization or Disclosure Statement. These facts are uncontroverted. Based upon the alleged lack of notice or knowledge, F.D.I.C. now contends that the Debtor committed fraud, or was guilty of negligent misrepresentation, justifying the reformation of the aforesaid settlement agreement of October 3, 1988, in order to provide an unsecured claim for F.D.I.C. in this estate that would allow F.D.I.C. to share in any damages recovered in the pending lawsuit for inverse condemnation damages against the City of Pompano Beach which is presently scheduled for trial.

The Debtor, through the Court-appointed Examiner, contends that F.D.I.C. had actual notice or knowledge of the pendency of this cause of action prior to the time the settlement agreement was negotiated and executed. Further, the Debtor, through the Court-appointed Examiner, contends that this adversary proceeding is time barred, pursuant to 11 U.S.C., § 1144, which precludes the court from revoking or modifying the order of confirmation after 180 days from rendition of the order of confirmation, even upon grounds of fraud. It is further contended that the F.D.I.C. is barred from seeking an unsecured claim in this estate by virtue of its failure to file a proof of claim therein. As the Court will decide this matter upon the factual issue of knowledge or notice, it is unnecessary for the Court to reach the aforesaid legal issues which were raised in Motions for Judgment on the pleadings and Motions for Involuntary Dismissal at trial. Said motions are therefore denied without prejudice.

It is clear from the underlying facts of this case that F.S.L.I.C. had notice or knowledge of the existence and/or pendency of the Debtor's cause of action for damages based upon inverse condemnation against the City of Pompano Beach as early as approximately June, 1987 when Stewart Chambers had his initial conversation with Patrick Barry. Subsequently, this knowledge and/or notice was reduced to writing when Patrick Barry reported to Laurel Isicoff in his letter of July 20, 1987

that "in the Ft. Lauderdale Sun Sentinel, Friday edition, July 17, 1987, Yardarm Restaurant, Inc. announced that it plans to file suit against the City of Pompano Beach for $135,000,000.00 ... a copy of that article is attached.". The Sun Sentinel article referred to in Mr. Barry's letter provided in applicable part:

"The Yardarm Restaurant, Inc. plans to file suit against Pompano Beach today for $135,000,000.00, company President Jim Stefanis said on Thursday.

Stefanis said fourteen years of city delays caused him to lose millions of dollars in profits on a proposed 18–story luxury hotel for the Hillsborough Inlet.

Stefanis expects to lose the property—which is vacant and covered with weeds—because he can't make payments he owes on the land.

Stefanis said the city should pay for his losses, and he said a Supreme Court decision handed down in June backs him up.

The Supreme Court ruled that property owners have a right to compensation when government regulations deprive them—even temporarily—of reasonable use of their land."

The article also reported that Earl Faircloth, Stefanis' attorney, "said that he would file the Yardarm suit in Broward Circuit Court".

Patrick Barry, in his testimony, recalled further, that the issue of the aforesaid lawsuit, was discussed directly with representatives with F.A.D.A. or F.S.L.I.C. (the predecessors to F.D.I.C.), and that possibly even copies of pleadings were ordered or requested. Laurel Isicoff, the attorney for F.S.L.I.C. who negotiated the settlement with the Debtor, could not recall that she had done anything to follow up on the information received with Mr. Barry's letter of July 20, 1987, which was over a year prior to the consummation of the settlement agreement.

Based upon the aforesaid facts, it is clear to the Court that F.S.L.I.C. had notice or knowledge of the cause of action for damages against the City of Pompano Beach at the time it entered into the settlement

agreement with the Debtor. By virtue of the information provided to Patrick Barry, as attorney for F.S.L.I.C., and the information transmitted by Mr. Barry to Laurel Isicoff, supervisory counsel for F.S.L.I.C., it was incumbent upon F.S.L.I.C. to pursue said information if it considered said information to be relevant to the issue of settlement, notwithstanding the fact that the information was not disclosed in any amendment to schedules or in the Modified Disclosure Statement or Plan of Reorganization.

It is the contention of F.D.I.C. that it was entitled to rely on the schedules and Disclosure Statement, notwithstanding the information available to it. In support of its position, F.D.I.C. relies on the cases of *In re Muscatell,* 113 B.R. 72 (B.C.M.D.Fla. 1990), as well as the case of *In re Braten Apparel Corp.,* 21 B.R. 239 (B.C.S.D.N.Y. 1982). The Court finds these cases to be inapplicable to the facts in the instant case. The *Muscatell* case involved an objection to discharge under 11 U.S.C., § 727, in which the issues of disclosure are totally different from the issues of the present case. The *Braten Apparel* case, while it does involve facts more similar to the instant case in that it involves non-disclosure of a cause of action and attempts to set aside confirmation, differs in that the information or disclosure which led to the creditor's action in that case were not made known until after the confirmation. The court thus determined that it was not the general duty of a creditor to look beyond the schedules and statement of financial affairs and that said creditors would have a right to rely upon the accuracy of the information contained therein. However, in the instant case, the creditor, F.S.L.I.C., had *actual* information and knowledge, which constituted disclosure of the existence of the cause of action. It chose to disregard that information, apparently because it cared more about obtaining the foreclosure of the real estate and obtaining a release of its own potential liability on the Debtor's cause of action against it and it did not put much credence in the Debtor's ability to recover these damages.

The cause of action of the F.D.I.C. being one for fraudulent or negligent misrepresentation, it cannot be heard to bury its head in the sand and deny the information plainly available to it, then alleging the Debtor's schedules and Disclosure Statement to form the basis for such misrepresentation.

Based upon the facts of this case, the Court finds that the Debtor did not engage in fraudulent or negligent misrepresentation and the F.D.I.C. is thus not entitled to reformation of the settlement agreement or an unsecured claim in this Chapter 11 proceeding. The complaint of the F.D.I.C. will therefore be dismissed with prejudice. As stated above, the Court finds it unnecessary to reach the legal issues involving the 180 day bar under 11 U.S.C., § 1144, or the non-filing of the proof of claim as this matter has been disposed of on its facts.

A separate Final Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

DONE and ORDERED.